MARY J. BENNETT *vs.* KENNEBEC FIBRE COMPANY.

Penobscot.    Opinion January 16, 1895.

*Flowage.    Deed.    Grantor and Grantee.*

These words in a deed, viz: "Also, the right of flowing the Great Pond" *held,* to mean a grant of uses suited to the existing conditions at the time the grant was made,—flowage incident to the maintenance of the then existing dam when repaired, made secure and tight.

ON REPORT.

This was a complaint for flowage. It was agreed that the right to maintain the complaint depended upon the construction of the deed, found below.

In the deed are these words :—"Also the right of flowing the Great Pond." The defendant corporation claimed that by this clause in the deed an unlimited right of flowage was conveyed, and that, by subsequent conveyances, they are now the owners of that right. The plaintiff claimed that by this clause in the deed only a limited right of flowage was conveyed—namely, the right to flow Great Pond to the extent to which the then existing dams flowed it,—and, as the defendant's dam now flows the pond to a much greater height, and he, the plaintiff, owns land bounded on the pond, which by reason of this

increased flowage, is submerged and injured, the above men-- tioned deed, though binding upon him, did not preclude him from a recovery for damages for such increased flowage. The parties agreed to submit its interpretation and construction to the law court. If, as claimed by the defendant, the right conveyed was a right to flow Great Pond to an unlimited extent, the complaint should be dismissed, and a judgment for costs was to be rendered in favor of the defendant. But if, as claimed by the plaintiff, the right conveyed was limited to a right to flow Great Pond to the extent to which the then existing dams flowed it the action was to stand for trial.

(Deed.)

Know all men by these presents, that I, John Benson, of Newport, Esq., in consideration of the seventeen hundred and fifty dollars paid to me by Joseph M. Moor of Newport, and Asa Redington of Augusta, as mentioned in my other deed to them of this date, do hereby release, remise and forever quit claim to them, their heirs and assigns forever all my right in the land under the lower bridge and road across the Sebasticook river in Newport. Also all my right of flowing water by the dam and of using the same in the pond or of drawing it through the dam, all my right of repairing the dam or of booming or securing lumber upon my shores in said pond or in the great pond above it, with the right of passing on said shores for said purposes, doing as little damage thereby as may be practicable. Also the right of flowing the great pond : Also the right upon my land in Elm street to throw lumber over the bank to be put into the mill pond, but without doing injury to any trees or buildings which now are or hereafter may be placed there. Also the right of a landing place for lumber on my lot adjoining and south of I. M. Josslyn's land. The said Moor and Reding- ton hereby stipulating to indemnify me, my heirs, executors and administrators against liabilities arising from any further neglects or refusals on their part to carry out and perform all stipulations relative to the subject matters of this grant and contained in any conveyances made by me or by any of the persons under whom I derive title.

In witness whereof, I, the said John Benson, and I, Thirza A., the wife of said John Benson, in token of hereby relinquishing all right of dower in the premises, hereunto set our hands and seals this first day of July, one thousand eight hundred and fifty-four.

John Benson,        [L. S.]

Thirza A. Benson.        [L. S.]

*H. H. Patten*, for plaintiff.

Where an owner of a mill dam and water privilege and also of land above, conveys the dam and mill privilege with a right of flowage, this court held that the grant would give the right to flow the land as the dam stood at the time of conveyance. *Butler* v. *Huse*, 63 Maine, 447.

For thirty-five years from July 1, 1854, to the fall of 1889, none of the grantees exercised the right to flow the Great Pond any higher than the dam would flow that was in existence when John Benson conveyed the right of flowing the Great Pond.

Judge VIRGIN says in the above named case: "And the manner in which this privilege was for so long a time openly and notoriously used and permitted to be used, is swift evidence of what the parties to the grant intended and understood to pass by it."

The existing facts at the time of conveyance all show that the grantor, John Benson, did not intend to convey any right of flowing his land any higher than the then existing dam would flow. It was the right of flowing the Great Pond which he quit claimed, and certainly that could not have been any higher than the dam would flow at that time, viz: July 1, 1854.

To ascertain the intention of the parties to a deed, it is proper to look at the existing facts at the time of conveyance. *Abbott* v. *Abbott*, 53 Maine, 360.

*Orville D. Baker*, for defendant.

There is no reason apparent from an examination of this instrument why this sentence should be limited in its effect when its terms are as broad as those of other grants in the same deed which are clearly unlimited.

Suppose that the grantor had fully intended to give the right to flow as high as the grantees might desire, he could hardly have expressed that intention more clearly than he has in the words used. The language is plain and simple. A fair inference is that he intended that should be taken as plainly. He intended to grant all the right of flowage which he possessed, and not a part only.

If the construction for which the plaintiff contends can be forcibly imposed on the language here, we see no reason why any other arbitrary line might not be adopted as well. This line might be above or below the point at which the water was at the time of making the deed. If we once depart from the language of the deed and endeavor to set up a boundary which does not exist in fact, and for which no warrant is found in the instrument, we have the whole realm of conjecture from which to draw a possible intention, and may select the one which best fulfills our wishes. We have no guide but our own desire.

But in construing this sentence there is no need of importing any new matter, or of imputing to the grantor any intention which we do not know that he had. The interpretation which we seek to have sustained does no violence to the language of instrument. It does not compel us to establish arbitrary bounds, without warrant. It does not require us to grope in the dark for possible intentions of the grantor. It stands on the language of the deed and invokes the familiar rule that ordinary words shall receive their ordinary meaning, no strong, substantial reason appearing to the contrary. We simply take the deed at its word, the language being plain and unambiguous.

Deed to be construed most strongly in favor of grantees. *Veazie* v. *Forsaith*, 76 Maine, p. 179; *Child* v. *Ficket*, 4 Maine, 474; *Lincoln* v. *Wilder*, 29 Maine, 182; *Grant* v. *Black*, 53 Maine, 376; Co. Lit. 183, a; *Morse* v. *Marshall*, 13 Allen, 290.

SITTING: EMERY, FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

HASKELL, J. Complaint for flowage, reported to the court for the construction of a single clause in a deed. The clause is:

"Also the right of flowing the great pond." If the deed conveys an unlimited right of flowage, the complaint is to be dismissed with costs, otherwise to stand for trial. The only evidence reported is the deed, and from that alone its true construction must be sought.

Some of the familiar rules of construction are, that the language of a deed must be given that interpretation which it will best support; that where the meaning is doubtful it must be construed most strongly against the grantor, provided that it so accord with the apparent intention of the parties.

In the case at bar, the grantor conveyed the land under the bridge, the right of flowage by the dam, and of using the water in the pond or of drawing it through the dam, and of repairing the dam, of booming or securing lumber on the shores of the pond or in the great pond above, with the right of passage on the shores for the purpose, doing as little damage as practicable. "Also the right of flowing the great pond." Also the right of throwing lumber over the bank into the mill pond, and the right of a landing place, &c.

He conveyed various rights appertaining to a mill; land, flowage by the dam, use and right of repair of the dam, boomage rights in the mill pond and in the great pond above, and the right of flowing the great pond. There was a mill pond and a great pond above. Now, the grantor having conveyed rights touching the dam and mill pond adds, "the right to flow the great pond above." Not an indefinite right, but a specific right — the right necessary and incident to the uses required by the whole grant. Manifestly the parties had in mind the grant of an entirety. Such flowage of the great pond above as the existing dam, when in perfect order, repaired, made tight, would cause, and no more. The parties could not have intended the construction of a different dam, one that might work destruction to the riparian rights of the grantor, and flow out his land beyond what ever had been, or so far as he knew, had ever been thought of. Had such extraordinary flowage been contemplated by both parties, surely the deed would have specified it. The grantor naturally would not have suspected it, and if the grantees intended it,

they should have made their intentions known. Had they done so, they would have been careful to have had the grant commensurate therewith.

We think the plain import of the grant is of uses suited to the conditions existing at the time the grant was made, to wit, of flowage incident to the maintenance of the existing dam when repaired, made secure and tight.

*Action to stand for trial.*